S.p.A. v. Mrinalini Inc. Mr. Grove, I understand you would like to reserve two minutes for rebuttal. Is that right? That is correct, Your Honor. Please. This appeal is comparatively simple. We are... Famous last words. Our position is that the lower court erred by finding that there was an agreement to arbitrate when there was no such agreement, let alone a clear and unmistakable agreement to arbitrate. The court relied on some language in a document called the General Purchasing Conditions. We've highlighted that for the court in our brief on page 10. The language that the court relied on specifically is in section 22.2, and it refers to an agreement with a capital A, which of course is a defined term. The court mistook this document as a stand-alone complete agreement when it's clear on its face that it's not, and it's clear from the context that it is not, because it was meant to be a set of conditions to support and be appended to purchase orders that never were issued. The idea was... So I get that point. So you're saying that the purchasing conditions really are intended to be the conditions of a larger agreement that includes the purchase order. And since you didn't have a purchase order subject to these conditions, then the purchasing conditions are not a stand-alone agreement, right? That's right. But that's a debatable point, isn't it? I mean, you could conceive of this as you're agreeing, I mean, you've signed this document and accepted it. I mean, you could understand this as agreeing to a framework within which purchasing orders will occur, in which case it's enforceable before you have the purchasing orders, or you might understand it the way that you're understanding it, right? And so isn't that a question as to the enforceability of the terms of the general purchasing conditions? What we're raising isn't a question of enforceability, it's a question of formation, not validity. It's not a question of execution, it's not a question of validity, it's a question of  Our position is there was never an agreement formed in the first place because there were never any purchase orders, so there was never any definite subject matter, there was no mutuality, there was no consideration, there was nothing. It was just this hoped for... Well, there is some kind of, right? I mean, you know, let's say one or both of the parties made some kind of arrangements such that it could never, like it would prevent itself from ever complying with the purchasing conditions and thereby, when there were purchase orders, deny the other party the benefit of the bargain. Somebody might be able to sue for breach of the covenant of good faith and fair dealing, right, pursuant to this agreement. I think it's instructive to look at... Yeah, but would they be able to? Like if, you know, a counterparty to the purchasing agreement somehow made arrangements that were designed to deny the other party the benefit of those conditions, there might be a breach of the covenant of good faith and fair dealing, right? Right, but we didn't... But if that's true, then that means it's a contract, right? But it's not the contract, it's not the contract that we're talking about that the court used to send us into arbitration in Italy when we brought unrelated claims for intellectual property. Isn't the problem that you did enter into the general purchase conditions which did have an arbitration agreement, right? You don't dispute that, that you entered into the general purchase conditions and you agreed to that, right? We agreed to that expecting... And it has, but hang on. So you agreed to that. You may have had any number of expectations, but you agreed to it and it has an arbitration clause, right? It does. So then that raises a dispute about, well, what is the scope of that arbitration clause, right? And I understand you to say, well, it doesn't cover anything because we never did any purchases that were pursuant to the general purchase conditions. But the question is, well, what is the scope of the arbitration clause? And when you have a broad arbitration clause that you entered into, well, then it's reasonable for the arbitrators to decide that... For the court to decide that it's... For the arbitrator to decide questions of arbitrability, right? I mean, that's how it works. Right. But this is de novo review of a legal document and the document is on its face, not a handle. De novo review to figure out whether arbitrability was delegated... The arbitrator got the arbitrability question right, didn't he? I thought it was kind of a deferential, as long as there's an agreement. We don't even get to arbitrability because there was no agreement formed. I think that it's instructive... But I think you keep saying that there's no agreement, but you just admitted that you did enter into the general purchase conditions. You're saying that that is an agreement without a capital A, but that the terms of the thing that you agreed to don't trigger the arbitration clause. Unless there are purchase orders. I think it's instructive to... That's like having a contract where you say, we're going to agree to arbitration if there's a high tide and a blue moon in August or something. And then you say, well, that never happened. So of course it was never triggered. There's no arbitrability. But that's for the arbitrator to decide whether there was a blue moon and a high tide in August. I think that's putting the cart before the horse. We don't even get to what the arbitrator gets to do because there was no agreement formed. Again, I think it's instructive to look at the case that Valentino itself raised. Valentino raised the Supreme Court case in the Jackson v. Rent-A-Center case. And in the Jackson v. Rent-A-Center case, Valentino raised it to support the district court opinion. But it's distinguishable because, first of all, in that case there was actually an agreement. And second of all, the agreement has language in it that says the parties agree to delegate questions of formation to the arbitrator. We don't have that. Well, in fact, we don't require that. I mean, we don't require that particular language. It's always a context-specific question. But so what's the difference between formation and execution, interpretation, enforcement, or validity? Well, execution gets- Just to be clear. They are different. If the word formation was in this list, execution, interpretation, enforcement, validity, or formation, then you'd say, okay, the district court was right, right? Well, no, I wouldn't say that because we never- No, you just said the whole distinction between that other case was the word formation was in that agreement. So you're saying if the word formation was in this agreement, you still wouldn't agree that it applies. Yeah, that's not what I said. What I said was there are two points of distinction with the Jackson v. Rent-A-Center. First, in Jackson, there was no dispute that there was an agreement. Here, we're disputing that there even was an agreement because there were no purchase orders- Okay, but just to be clear, if this arbitration clause said, you know, any dispute that may arise connected to the agreement as well as associated or connected to its execution, interpretation, enforcement, validity, or whether there even is an agreement in the first place shall be referred to the arbitrator, then you'd say the district court would be appropriately in this case, right? Right, but we don't- So then I guess my question is, if it's delegating questions of execution, interpretation, enforcement, and validity, why doesn't that encompass the question of whether this is itself a valid agreement? That seems like that is a question of validity, isn't it? Because execution is different from formation. I said validity. Validity is different from formation, too. They're different legal concepts. You're saying you can have an agreement that you entered into, but it was an invalid agreement? In the Jackson case, Jackson said, yes, I entered into this agreement. Yes, it was formed, but I'm challenging the validity of it. So can I ask you to shift because we have some limited time here. I understand this is your lead argument, that there is no agreement to begin with for these various reasons. Can I just ask you to clarify, because it's not entirely clear to me from your brief, what, if any, defenses are you raising under Article V of the New York Convention? And can you be very specific? Because we have said, you can't just kind of make arguments and ask the court to figure out which of the enumerated defenses we think you're kind of, sort of making. So I want you to be very specific. What, if any, defenses are you asserting under Article V of the New York Convention? I don't think we're making any defenses under Article V. You're not making any defenses? Under Article V, because Article V— And that's helpful to me to know. Wait, hold on. So the district court said that your argument under Article V, 1E, that the district court should not confirm the award until the challenges in Italy were over. The district court said that was mooted. But I understood from the briefing that there actually still is a pending appeal. There is. So I stand corrected. I guess that is a defense, but our primary— No, no, we're not answering— I get that. But so you made that argument to the district court. So this is meant to be helpful, I guess. You made that argument to the district court. The district court said it was mooted. But that's because the district court thought that basically your petition to stay the award pending appeal was denied. But there still is a live appeal on the merits, right? There is a live appeal on the merits, yes. So you did have an argument before the district court that it should wait to confirm the award until that appeal was resolved. That's correct. But the district court thought that that appeal was no longer pending. It seemed to, yes. It seemed to because I think— But because it said that it was mooted. And like if there is a lot— And it was mooted because nobody has told me that it's possible to appeal and so on, right? There's no pending appeal. I think there's some specific provision in the Italian legal system for you to get something like a preliminary decision from the appeals court about— Well, I got the impression, I read the decision, is that they basically lifted a stay of enforcement, right? So there are two things going on, right? There's a pending appeal before the Court of Appeals in Milan. And the one decision we've got from them is saying, well, there's no reason to stay or rather suspend, I think would be the more precise. There's no reason to suspend enforcement of the award, right? But they're going to take it on their merits. I assume, by the way, there's no update on that? There is none. I think that decision was August of 2023. So we're still in the same position as demonstrated by the record. So I think the question is this, in terms of what you raised, because there are really two things. Article 5, 1E, provides one defense saying that the award has been suspended or vacated, whatever the word is, by a foreign jurisdiction, right? And then there's Article 6 that allows the court to adjourn to say, well, you know what? If there's something pending, we can kind of put this on ice. But those are two different things, right? There's the Article 5, 1E defense, which I didn't see you argue here. And maybe the district court was wrong. But I didn't see anything in your blue brief saying that the district court was wrong for doing it. If anything, you only talked about Article 6. Well, you talked about adjournment, which is not an Article 5 thing. It's an Article 6 thing, which sort of says preserve your right, in a way it could be understood as preserving your right to later assert an Article 5, 1E defense. But when you talk about adjournment, it's like a paragraph long. And you basically say, go read our district court brief, which we don't do litigants' homework for them. We don't do that. We don't go digging through the docket. If you say, go read docket number 83, and say, oh, well, that's great. Maybe there's a brief there. I wonder if there's a great argument under Europe CAR. You didn't talk about the Europe CAR elements, the factors at all. You said, go read what we told the district court. And that is not something we're in the business of doing. And I think, in fact, your brief, let's see here, is under 4,000 words, right? That means you had 10,000-word capacity to add to your brief. And instead of laying out a Europe CAR argument, you told us, go look it up for yourself and read it. So I guess I'm wondering how you preserve for us to entertain your adjournment argument when you don't even tell us what the argument is. You just said, oh, we made a good one to the district court. Yeah. Your Honor, respectfully, we didn't spend a lot of time arguing that because, as you probably gathered, the entirety of our argument is that . . . Yeah, yeah, yeah. I get that. Maybe you went on that, but maybe you don't. And if you were to lose on that, then we have to turn to the adjournment argument. My question to you is, how do you consider your argument on pages 19 and 20 as adequately presented to us an argument that the district court should have adjourned things to see how things play out in Italy? Because that's potentially a viable argument. But all you say is that, hey, it's pending. And we told the district court some good stuff. All that we told the district court was that it was pending. No. Well, you said you reported many reasons to adjourn in ECF number 33, sections 4D and E. And I'll tell you this. I haven't looked it up. I have not pulled ECF 33, sections 4D and E, because that's not our job. I'm wondering. Maybe there are great arguments in there, but you didn't make them to us. So I'm wondering, what is the basis in your brief that you have asserted to us for adjourning? I had to make judgments about what to emphasize on appeal. Yeah, 10,000 extra words. Our emphasis on appeal is the upstream. All right. I have a question about the Italian. The Italian arbitrator thought that agreement under the arbitration clause referred to the whole course of dealing between Miralini and Valentino. And therefore, these intellectual property questions were connected to the agreement, right? And that is the question that's being litigated now on appeal in the Italian courts, whether it is. Right? Right. So the question of arbitrability under the agreement and contract formation is being adjudicated there, right? So you might end up getting your resolution to that effect from the Italian courts. And so but your position here is that that position of the arbitrator was just so so frivolous that we should decide it's indisputable that there's no agreement in this case. That's right. That's the focus of our appeal is that there was never any agreement to arbitrate in the first place. So if there were an agreement, if there were purchase orders, these general conditions would be part of that agreement, right? If there were, but there weren't. Okay. I get that argument. Thanks. All right. We kept you up considerably past your time, but we'll have you back for two minutes of  Why don't we talk to counsel for the appellee, Attorney Bach. Good morning, Your Honors. And may it please the court. Jordan Bach from Goodman Proctor representing Valentino. I don't want to belabor a lot of the points that the court raised. I think we agree with the thrust of a lot of the questioning, but I do want to touch on the arbitrability question, the merits question on the underlying purchase order issue, and then this Article 5.1e, Article 6 question. Starting first with arbitrability, I think as Your Honors pointed out, this agreement has an incredibly broad arbitration clause. It is sort of broader than textbook broad. It not only defers to arbitration, any dispute arising in connection with the agreement, it also specifically calls out enforcement and validity and interpretation. Who wouldn't disagree that? Let's say that there were a draft purchasing agreement that nobody had ever signed that was out there, that they were thinking about signing. And then this lawsuit came up about the intellectual property claims. No one would say that that has to be arbitrated, right? Because it's very clear that that's not a real agreement, right? That's correct. So if we think that this is tantamount to that, if we think that this agreement never came into force, this is not a real agreement, it would look like that, right? And then the arbitration clause would not come into effect, right? That is correct. Okay, so why isn't this like that? You know, they sign these general conditions in anticipation of an actual exchange, right, involving a purchase order, and they never do any purchase orders. So there really isn't a contract between the parties. There's like, you know, some preparation for having a contract between the parties, but they never really exchange anything. I think two points are important here. One on the merits, one on who should actually have decided this. But just starting with the merits, and I don't know that this came through in the briefing fully, so I want to emphasize this. There were purchase orders. What the crux of the dispute was before the arbitrator was whether the purchase orders were based on Rinalini designs or Valentino designs. And the point in particular that I'd point the court to is page 421 in the appendix, which is from the transcript of the arbitral proceedings. This came up at a couple points, but in particular on 421, counsel from Rinalini said, and I'm quoting, after the execution of the general purchase conditions, to my understanding, we received multiple purchase orders from Valentino, but they were purchase orders based on designs provided to us by Valentino. Then what the arbitrator said, and this is on page 280, is there is no distinction in the agreement between purchase orders based on designs from Rinalini and purchase orders based on designs from Valentino. It explained that materials is defined broadly, and that splitting the agreement in that way would make no sense. I think that is- That's a kind of different point, right? So my understanding is that Rinalini and Valentino, their relationship has kind of changed, right? It used to be that Rinalini provided designs and Valentino would order them, and then this purchasing agreement is based on a model where they're just kind of the manufacturer of Valentino designs, right? Okay, so if that's true, then if the claims about intellectual property infringement are from the earlier relationship where Rinalini provided designs to Valentino, why isn't that just not connected to this agreement? Because this is about some future relationship where Valentino provides the designs, but the alleged infringement is based on an earlier relationship that wasn't subject to this agreement. I think A, because that's in- I would disagree with that characterization of the dispute, and B, just to go back to the original question you asked, I think that shows that then we're very much in the land where there was a signed enforceable agreement, not in the hypothetical you posed originally of, you know, the parties are contemplating an agreement that they never signed, they signed these general purchasing agreements here. There were then, you know, an exchange of purchase orders. So we're very much in the world where there is- there's an enforceable agreement, there's a course of conduct between the parties, you know, this exchange of materials is what then led to all the disputes in this appeal. So I just want to emphasize how far away we are from the hypothetical. Well, the swatches that are the subject of the legal- the infringement claims, were they provided from Mirnalini to Valentino pursuant to this purchasing agreement or to some kind of earlier relationship between the parties? There were disputes over different swatches, but I believe they were provided under the terms of this purchasing agreement, and that was exactly the dispute that went before the arbitrator. And I think, you know, there's just- to pivot back to the arbitrability point, you know, I think on the merits, even if you were to take a de novo view, we have the correct view of the contract, but all of this is taking place in the context of an arbitral proceeding that then is being reviewed in this court in what, you know, the Second Circuit has reputedly held is effectively a summary proceeding. The arbitrator's determinations about what is and what isn't connected to the arbitration agreement get extensive deference. And I think the arbitrator here- Well, unless the district court erred in ordering arbitration, right? I think- I think that is correct in the sense that, yes, there would be de novo review over that the district court properly sent the case to arbitration. Here- Right. So you're saying that this is not like that case, but if this were a case where the district court just looked at a draft agreement that never came into force and ordered arbitration, based on that, we would say, well, that was wrong, and we would send it back, right? I think if there was- the question about- I think it would depend. The agreement here says specifically that the enforcement of the agreement is for the arbitrator, so I think the reason I'm hesitating to answer your hypothetical is, you know, if no one had ever signed the agreement and there's just no agreement in force, then perhaps there would be a question of whether there's even an agreement to arbitrate. But here, there is a signed agreement, and the agreement specifically delegates- Right, but you're just saying that here- there must be some case in which it's clear that there's no agreement, and the district court would err in ordering arbitration, and there's some case in which it's ambiguous, in which case it's for the arbitrator to decide, and maybe- I don't know if we need to define that line, maybe we do. But you're just saying this is over the line. But if it were a case where there just, you know, it was obvious there's no agreement, the district court would have made a mistake, right? But then maybe it's not even a draft agreement. Maybe the district court says, you know, I read an email from one of the parties, and I think that reflects, you know, an implicit agreement between the parties to arbitrate everything, so I'm ordering arbitration. Even though that is a question about the validity of an arbitration agreement, I think we would say, well, that's crazy. You shouldn't have ordered arbitration, right? So we do need to decide whether, you know, there is a serious question about the validity of this arbitration agreement. I think that's true. I think the interesting sort of, like, hiccup in this case is you had both the motion to compel from the district court and then the award coming back down. So, you know, in some cases you would just have the award initially, and then a party would apply to the court for confirmation of the award, and there would be sort of no proceeding motion to compel from the district court. Here we have- there was the motion to compel because of how this got teed up procedurally, and then also this separate award coming back down. I think, you know, there is an argument that under Article- that the validity questions are actually encompassed under the New York Convention, under Article 5.1e. That's not how I understood Rinalini to be framing its argument here, but you could have said- I thought you were saying that there's no argument, period. Not that there isn't an agreement, but it's an invalid one. I thought they were saying this never became an agreement. It was sort of an agreement to agree. I don't know if that's sort of a way of putting it, sort of. We agreed that if a number of things happened in the future, there would be an agreement. Those things never happened in the future. Therefore, this never became an agreement at all, I think. I think that's how they're framing it. I just think that bears no relationship to the facts of this case, where there is a signed purchase agreement. There are purchase orders going- I think I just asked you if you said signed. I thought there was something, and this is a fine point that maybe doesn't matter because everyone seems to agree that the Bardis did agree to the general purchase orders, but I thought there was some indication they had never signed it, but that the arbitrator had said, well, it was never signed by- I think it was Rinalini, but they were the ones who submitted it to me, and that is basically an implicit admission that they are bound by it, because if they're the ones who give it to us, then there we go. But I may be getting that wrong. Could you just clarify that? Because everyone keeps saying everybody signed it, but I thought that wasn't literally true. I agree with you with one correction, which is- and this is outlined in detail in 274 in the arbitrator's decision. Rinalini signed the agreement. It's a Valentino- It's the other way around. Sign it. Rinalini signed it. It's your side who didn't, but you're the ones who submitted it, and you're saying, but we agree this was something that we were bound by. Got it. That's correct. And the arbitrator explains on 274 why that's correct as a matter of Italian law specifically. It explains that Rinalini satisfied Italian law has a second signature requirement that you specifically sign the arbitration provision in particular, which Rinalini signed here, and that because Valentino submitted it in the legal proceedings, it's valid. It's just helpful because we keep saying everybody signed the agreement. I just want to make sure that we don't ever write an opinion deciding for either of you where we say both sides signed it, and that's not literally true. That's right. Rinalini signed it. It was a Valentino agreement, so there was sort of mutual assent to be bound on both sides, and that's what the arbitrator- Why shouldn't we understand that to be, you know, Rinalini signs it and says, this shows that we're prepared to receive purchase orders from you, and once we do, we'll abide by these terms, but it never really is a contract between the parties until Valentino actually completes its side of the thing by making a purchase order. Well, I think, one, not to reiterate it, is there were purchase orders, so I think we're in the world where they had an agreement. Had there been no purchase orders, which is not the situation here, I think you can still have a unilateral contract, at least often how these supply agreements work, where you have one party agreeing to supply materials if the other party then issues purchase orders, and as the arbitrator explained, this is on 282, you know, the parties had this long-term relationship for the supply of materials, and that's why the arbitrator determined, I think, in a correct and in a minimum incredibly reasonable interpretation of the contract, why it was here that- Okay, I think I get that argument. Can I ask about the Article 5.1e question? So I agree, I take it there's some question as to whether Rinalini is making this argument or resting on it, but the district court said, at the time the parties submitted their briefing on the motion to confirm and enforce the final award, Rinalini had previously filed an appeal challenging the award decision in Italy. However, since the briefing on this motion ended, the Court of Appeals of Milan has dismissed Rinalini's petition to suspend the final award, while the parties agree that a further appeal to the Supreme Court of Cassation, the highest court of appeal in Italy, would be possible. Rinalini has submitted nothing to the court to indicate that it has or ever intends to appeal further in the Italian courts. As such, the court finds that Rinalini's argument pursuant to Article 5.1e is mooted. So that was wrong, right? Because in fact, there still is a pending appeal before the Court of Appeals of Milan, which you acknowledge, right? That's correct. I think, you know, as your honors recognize, the district court may have confused what was a proceeding over essentially a stay pending appeal for the actual appeal. I think the district court's discussion is still relevant because on 6.02, the district court explains that the reason the Italian courts denied the motion to stay pending appeal was because they found no, you know, imminent, or sorry, imminent... Yeah, that's true. I mean, just the fact that the fact of a pending appeal doesn't prevent the district court from confirming an award, but the district court does have to apply the Europcar Italia factors, right, in order to evaluate an argument. And it never did that because it thought that the question was moot. That's correct. I think it doesn't change the outcome here. You know, we went into detail in our brief for why the Europcar factors all weigh in favor of... Right, but we usually say that that should be decided by the district court in the first instance. Do you think we could decide that on appeal? Yes, for two reasons. One, I think Rinalini has waived that multiple times over. I think it waived it in its brief by incorporating the briefing. I think it barely raised it here, even when given sort of imminent opportunity to move forward with it. When you say it, you mean the adjournment question under Article 6? I think Rinalini hasn't separated it. I think it waived both any argument under Article 5.1e and an adjournment question. Because as of now, there is no defense they've got under Article 5.1a, right, because it has not been suspended or anything. So at best, they've got an adjournment to say, and in the future, there may be a 5.1e defense, hopefully, maybe, right, from their standpoint. So please apply the Europcar factors, and don't decide it yet, even though we would lose at the moment. But, you know, there's a reason under Article 6 sometimes you postpone that ruling. That's correct. What I understood them to be trying to say in their briefing, I think under 5.1e, is there's a sentence that the award has not yet become binding on the parties, and I thought they were referring to that. Well, it is binding, right? Yes, we think it is. It's executory, because I thought that was the whole point of the Court of Appeals in Milan denying the stay, saying, look, you know what, the worst thing that happens is they're going to pay money. Valentino's a big company. We saw their balance sheet. You know, if this whole thing gets thrown out in a year or two, there's no danger Valentino isn't going to be in a financial position to pay the money back. And Rinalini says to the Milan Court of Appeals, well, we're, you know, in dire financial straits, and the Court of Appeals hasn't given us any documentation that would substantiate that. You've given us, you know, one or two pieces of information, but not nearly enough to give us a global picture of what your financial status is. So having not made that showing, let the chips fall where they may in New York. New York judge can do whatever the New York judge does. None of our business, right? I mean, is that sort of what happened? I think that, but also I think there was, you know, as the district court relayed, a merits determination that looking at the appeal, the— Milan, right. They also basically said, rough equivalent, you know, no FUMAs basically, no permanent fascia showing of likelihood. I guess we would say no likely success in the merits and also no curriculum and more of basically no danger from delay, which is kind of sort of our irreparable harm or something. Not really, but no real danger coming from delay. That's right. And you don't want to lose the, I think the important point here, which is why the court should confirm the award now rather than adjourning or rather than sending it back to the district court. And the two reasons are, you know, I think even if this isn't arising, if we think their current argument isn't arising under 511E specifically, I think Europe CAR is still instructive because what Europe CAR says is, you know, the procedural posture of how the challenge arises both abroad and in the United States is important. You can't have a party appeal for an arbitral award and then argue that the appeal it is raising in the foreign country is the reason not to confirm the award in the U.S. It would allow any party that's unhappy with the outcome of the arbitration to sort of do an end run and put it on. That's not an end run, right? I mean, because it means that it's not clear what the outcome of the arbitration is going to be. So on appeal in Italy, they're contesting the arbitrability. And in principle, it's possible that the Italian courts will decide the arbitrator was wrong in saying that this dispute was arbitrable under the agreement, right? So like it's possible that the court will find in their favor and then they're going to have to vacate the arbitration award and then their court at least evaluate, you know, whether that's a justification for waiting to confirm the award. No, I don't think so. Because I think the rule your honor is positing would really upend the confirmation of awards under the New York Convention. You can't. So just why is it important to confirm? I mean, your arbitrable arbitration award is defensive, right? So you're basically saying Miralini doesn't have intellectual property claims against us, right? But those claims that it's pursuing are before the same district court that's considering the motion to confirm the award. So whether the award is confirmed or whether the district court waits to hear what the Italian courts decide, you're still not going to proceed on those claims, right? There is an ongoing question in the district court about precisely which claims are alive following the arbitration. I think the reason it's important to confirm the award now is I think that will give the party certainty about the arbitration having been concluded and then they can move on with determining the remaining claims. There's a dispute about which claims were actually resolved by the arbitration. The party submitted letter briefs to Judge Vaiskasil. That's given the arbitration. But, you know, if the district court is going to proceed on the unjust enrichment claim, which I think is the claim that the arbitrator sent was not arbitrable, maybe it would lead to duplicative proceedings if they ended up prevailing in the and maybe the district court should at least consider whether it makes sense to see what the Court of Appeals of Milan says. I don't know what the outcome of that is. You haven't really debated that question before us. So isn't that for the district court to decide? No, I don't think so. I mean the whole framework of the New York Convention is that parties can take what is a final award in Italy and then confirm it in the U.S. so that they actually have a defensible judgment and can move on with their proceedings rather than... I have this other question. So you agreed that the district court was wrong to say that the Article 5.1e argument was moot because of what was going on in Italy. I mean, mootless is a jurisdictional issue, right? Like, if the district court acts in the absence of jurisdiction, it doesn't matter if the parties raise it, we should intervene. If the district court doesn't act in the presence of jurisdiction, we say it has an obligation to do so, that's a problem, right? I mean, shouldn't they be worried by the fact that they had a claim and the district court erroneously said, I don't have jurisdiction over this claim and I'm not even going to consider it? I don't think so for two reasons. First, the structure of the New York Convention is that Marinolini has the burden to show that the award should not be confirmed. So I think the framework we're looking at here is, has Marinolini shown in its briefs in this court and in the district court that this is a basis not to confirm the award? Marinolini didn't even raise to the district court that there was this confusion over the stay pending appeal versus the actual judgment. So I think there's no way in which Marinolini has carried its burden to show here that this very award from the Milan Chamber of Arbitration shouldn't be confirmed. And then in the jurisdictional question, you know, I don't think there was any sort of defect in the district court's jurisdiction or anything like that. The district court was thinking about the Europcar factors, said, you know, essentially it didn't need to wade into these because it was under the impression that the intermediate appeal in Italy had ended and it wasn't clear what the status of it was. Right, so it never got into the Europcar factors, even though it should have. I mean, I think you agree it should have done that because it shouldn't have regarded the claim as moot. Yes, we agree with that. We do, I will emphasize, we do not think it needs to go back down to the district court to redo that analysis. I mean, A, because of the fact that it was barely teed up on appeal. But B, I think, you know, we outline in detail, and I'm of course happy to go through them if that's helpful, why the Europcar factors weigh decisively in favor of confirmation here. And I don't think there's any, there's no outstanding record question. There's nothing that the district court would do on remand. All of the information, you know, is based on what happened in the Milan Chamber of Arbitration. So again, I'm happy to go through them. We went through them extensively in our briefs, but I will stress that I don't think there's any reason to send that back down to the district court. The final point I'll make, if it's okay to add one sentence. Make it real quick. Because opposing counsel leaned heavily on Renta Center versus Jackson, just emphasize, I think that case, you know, really benefits our position here, because it shows that if you're challenging the agreement as a whole, as opposed to the arbitration provision, that goes to the arbitrator. None of Green and Leaney's arguments go to the arbitration provision in particular. They're all to the agreement as a group. Two minutes of rebuttal. We're going to keep it very tightly to two minutes, so if there's anything opposing counsel said that you think merits a response. Well, just the part about the purchase orders. I think that the record is pretty clear that there were no purchase orders connected to the general purchasing conditions. There were none that were submitted subsequent to that. She referenced some vague language about what. Opposing counsel just said there were purchase orders that were submitted after these purchasing conditions were agreed to. Is your argument that that's incorrect? Yes. That those purchase orders were pursuant to some earlier purchasing agreement. Yes, that is incorrect. I think you just phrased it differently. There were no purchase orders subsequent to the general purchasing condition. There's no evidence of that. We've challenged that there were some that happened afterwards, but they were not pursuant to those general purchase conditions. We've challenged them on this over and over again. Could you just answer my question? Temporarily, were there any purchase orders that post-dated, of any sort, between the parties that post-dated the general purchase conditions? I don't believe so. Temporarily, there just were none of any sort. Not just the ones you don't feel within the applicability of those conditions. There just literally were no purchase orders of any sort after that date. The purchase orders I'm aware of were before this and unconnected to the general purchasing agreement. Fair enough. That's where I want to add, but go ahead. That's it. Thank you. Thank you very much, Mr. Crow. We will take the case under advisement. Thank you both very much.